IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

WALTER WILLIAM SELMON                                        PLAINTIFF

v.                      Civil No. 1:16-cv-01087

DR. DELUCCA; NURSE SHERYL
MENDENHALL; JAMES BOLTEN; and
DAVID NORWOOD                                        DEFENDANTS

## REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

This is a civil rights action filed *pro se* by Plaintiff, Walter William Selmon, under 42 U.S.C. § 1983. Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3)(2011), the Honorable Susan O. Hickey, United States District Judge, referred this case to the undersigned for the purpose of making a Report and Recommendation. Currently before the Court is Defendants' Motion for Summary Judgment. ECF No. 12. After careful consideration, I make the following Report and Recommendation.

### BACKGROUND

Plaintiff filed his Complaint on October 21, 2016, alleging Defendants were deliberately indifferent to his serious medical condition, subjected him to unconstitutional conditions of confinement and denied him access to a law library during his incarceration at the Ouachita County Detention Center ("OCDC"). ECF No. 1. Plaintiff is currently incarcerated in the Arkansas Department of Correction ("ADC") – North Central Unit, in Calico Rock, Arkansas. Plaintiff is suing Defendants Dr. Deluca (incorrectly identified as "Dr. Delucca"), Sheryl Mendenhall, Sheriff David Norwood, and Lieutenant James Bolton in their individual and official capacities. Plaintiff is seeking a "copy of all my grievances & medical – sue all defendant for my suffering and grief". ECF No. 1.

1

Defendants Deluca, Mendenhall, Norwood and Bolton filed a summary judgment motion on May 15, 2017, stating they are entitled to judgment as a matter of law because: 1) there is no basis for official capacity liability; 2) Defendants are entitled to the protections of qualified immunity; 3) Defendants were not deliberately indifferent to Plaintiff's serious medical needs; and 4) Plaintiff failed to exhaust his administrative remedies with respect to his claims of unconstitutional conditions of confinement and denial of access to a law library. On June 5, 2017, Plaintiff filed his Response to the motion for summary judgment. ECF No. 16.

Plaintiff was booked into the OCDC on September 16, 2016 and was released to the custody of the ADC on November 30, 2016. ECF No. 16. Plaintiff alleges Defendants Deluca and Mendenhall did not provide proper medical treatment to him. In particular, Plaintiff's Complaint states he is suing these defendants for "medical indifference" and "malpractice". ECF No. 1. In 2016, Defendant Deluca was the physician who provided medical evaluation and treatment for OCDC detainees. During Plaintiff's incarceration, Defendant Deluca and one of his nurses came to the OCDC one day each week for medical appointments with detainees. ECF Nos. 14-1, 14-7, 16. Defendant Mendenhall helped coordinate medical appointments between OCDC detainees and Defendant Deluca. ECF No. 14-7. Defendant Mendenhall was not usually present in the examination room when Defendant Deluca and his nurse saw detainee patients. ECF No. 14-7. Defendant Mendenhall would let Defendant Deluca know what each detainee wanted to see him about and then Defendant Deluca would review the matter and decide whether or not it was necessary for him or his nurse to see and examine the detainee. ECF Nos. 14-7. According to the record, Defendant Deluca did not always see every detainee who requested to see the jail doctor during sick call. ECF Nos. 14-7, 16.

Defendants Deluca and his nurse were at the OCDC on September 20, 2016, October 11, 2016, October 31, 2016 and November 17, 2016 when Defendant Deluca or his nurse either saw Plaintiff or were informed of Plaintiff's request for medical treatment. ECF Nos. 14-1, 14-4, and 14-7. On each occasion Defendant Deluca or his nurse made a corresponding Jail Clinic note regarding Plaintiff's condition and treatment and initialed each note. ECF Nos. 14-4, 14-7. On September 20, 2016, the corresponding Jail Clinic note indicates Plaintiff complained about having a rash and was prescribed medication. On October 11, 2016, the corresponding Jail Clinic note indicates plaintiff was "having pain in the genital area" and increased pain "…when he tries to have a Bowel movement" and Plaintiff was prescribed medication. On October 31, 2016, the corresponding Jail Clinic note indicates Plaintiff complained of "…pain…in his groin & anal area. He is refusing to take prescribed meds says it gives him a headache. Wants to see doctor". As a result, of his refusal to take the prescribed meds his medication was discontinued. On November 17, 2016, the corresponding Jail Clinic note states Plaintiff "…will not give symptoms just says he is hurting" and the physician's findings stated "patient continues to refuse to give detailed symptoms and complaints. Patient refused prior medications. No treatment or new medications provided for today's encounter." ECF Nos. 14-1, 14-4, and 14-7.

Plaintiff alleges Defendant Bolton is liable to him "for unsanitary living conditions/Black mold in the showers-Brown hot water above the toilet is the only drinking water-unsanitary cleaning supply's – and a outbreak in Boils from the heat in the pod." ECF No. 1. Plaintiff submitted grievances concerning how hot it was in his pod on September 26, 2016 and October 15, 2016. ECF Nos. 14-1, 14-6. Defendant Bolton responded to each grievance and noted that as of September 28, 2016, the air conditioning was working fine and as of October 18, 2016, an air conditioning repair service had been called. ECF Nos. 14-1, 14-6. There is no record Plaintiff

3

filed any grievance relating to mold, drinking water, or unsanitary cleaning supplies. ECF Nos. 14-1, 14-6.

Plaintiff is suing Defendant Norwood because of "…no access to a law library…I fired my public defender and have to go to court Blind. I am suppose to be able to have access to Law Text books to defend myself In a court of law…:" ECF No. 1. Plaintiff submitted one request stating he may not have an attorney after his October 20, 2016 hearing and "I need access to a law librey". ECF Nos. 14-1, 14-6.

**LEGAL STANDARD**

The Court "shall grant summary judgment if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[A] genuine issue of material fact exists if: (1) there is a dispute of fact; (2) the disputed fact is material to the outcome of the case; and (3) the dispute is genuine, that is, a reasonable jury could return a verdict for either party." *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.,* 49 F.3d 399, 401 (8th Cir. 1995). The moving party has the burden of showing the absence of a genuine issue of material fact and they are entitled to judgment as a matter of law, but the nonmoving party may not rest upon mere denials or allegations in the pleadings and must set forth specific facts to raise a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986).

The Court must view all evidence and inferences in a light most favorable to the nonmoving party. *See McCleary v. ReliaStar Life Ins. Co.,* 682 F.3d 1116, 1119 (8th Cir. 2012). However, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts

for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

## DISCUSSION

It is not clear from the record whether Plaintiff was a pre-trial detainee or a convicted prisoner during his incarceration in the OCDC. For purposes of this Motion for Summary Judgment the Court will assume Plaintiff was a pretrial detainee at the time of the alleged violation of his constitutional rights.

1. Official Capacity Claim

Under section 1983, a defendant may be sued in either his individual capacity, or in his official capacity, or claims may be stated against a defendant in both his individual and his official capacities. *Gorman v. Bartch,* 152 F.3d 907, 914 (8th Cir. 1998). With respect to the official capacity claims, they are "functionally equivalent to a suit against the employing governmental entity." *Veatch v. Bartels Lutheran Home,* 627 F.3d 1254, 1257 (8th Cir. 2010). In other words, an official capacity claim against Defendants Deluca, Mendenhall, Norwood and Bolton is treated as a claim against Ouachita County. *See Murray v. Lene,* 595 F.3d 868, 873 (8th Cir. 2010).

"[I]t is well established that a municipality [or county] cannot be held liable on a *respondeat superior* theory, that is, solely because it employs a tortfeasor." *Atkinson v. City of Mountain View, Mo.*, 709 F.3d 1201, 1214 (8th Cir. 2013). To establish Ouachita County's liability under section 1983, "plaintiff must show that a constitutional violation was committed pursuant to an official custom, policy, or practice of the governmental entity." *Moyle v. Anderson*, 571 F.3d 814, 817 (8th Cir. 2009) (citation omitted). To establish the existence of an unconstitutional policy, the plaintiff must point to "a deliberate choice of a guiding principle or

5

procedure made by the municipal official who has final authority regarding such matters." *Mettler v. Whiteledge*, 165 F.3d 1197, 1204 (8th Cir. 1999).

In *Johnson v. Douglas County Medical Dept.*, 725 F.3d 825 (8th Cir. 2013), the Court outlined the necessary elements for establishing the existence of an unconstitutional custom. To establish a claim for "custom" liability, [Plaintiff] must demonstrate:

> 1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees; 2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and 3) That Plaintiff was injured by acts pursuant to the governmental entity's custom, *i.e.*, that the custom was the moving force behind the constitutional violation.

*Id.*, 725 F.3d at 828 (citations omitted).

Plaintiff alleges Defendants were deliberately indifferent to his serious medical needs, subjected him to unconstitutional conditions of confinement, and denied him access to a law library. In his Complaint Plaintiff checked the box for "both official and personal capacity". ECF No. 1. In his Response to the Motion for Summary Judgment Plaintiff states he is suing Defendants in their official capacity because "the defendants acted individually by depriving me of medical care & treatment, but because these defendants were hired by the Ouachita County Detention Facility, where they automatically had a legal obligation to provide medical care". ECF No. 16. However, the law is clear – a county will not be held liable for the acts of its employees simply because they are employed by the county. *See Atkinson*, 709 F.3d at 1214. The record does not reflect any summary judgment evidence of an unconstitutional policy or custom of Ouachita County that contributed in any way to a violation of Plaintiff's civil rights. Accordingly, Plaintiff's claims against Defendants in their official capacity fail as a matter of law.

2. Denial of Adequate Medical Care

The Eighth Amendment prohibition of cruel and unusual punishment prohibits deliberate indifference to the serious medical needs of prisoners. *Luckert v. Dodge County*, 684 F.3d 808, 817 (8th Cir. 2012). The Eighth Circuit analyzes both a pretrial detainee's and a convicted inmate's claim of inadequate medical care under the deliberate indifference standard. *See Butler v. Fletcher,* 465 F.3d 340, 344 (8th Cir. 2006). To prevail on his Eighth Amendment claim, Plaintiff must prove Defendants Deluca and Mendenhall acted with deliberate indifference to his serious medical needs. *Estelle v. Gamble,* 429 U.S. 97, 106 (1976).

The deliberate indifference standard includes "both an objective and a subjective component: 'The [Plaintiff] must demonstrate (1) that [he] suffered [from] objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs.'" *Jolly v. Knudsen,* 205 F.3d 1094, 1096 (8th Cir. 2000) (quoting *Dulany v. Carnahan,* 132 F.3d 1234, 1239 (8th Cir. 1997)). In order to show he suffered from an objectively serious medical need, Plaintiff must show he "has been diagnosed by a physician as requiring treatment" or has an injury "that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Schaub v. VonWald*, 638 F.3d 905, 914 (8th Cir. 2011) (internal quotations and citations omitted).

In order for Plaintiff to establish the subjective prong of deliberate indifference, "the prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not give rise to the level of a constitutional violation. Deliberate indifference is akin to criminal recklessness, which demands more than negligent misconduct." *Popoalii v. Correctional Med. Servs,* 512 F.3d 488, 499 (8th Cir. 2008) (internal quotation marks and citations omitted).

7

Plaintiff admits Defendant Deluca and his nurse came to the OCDC on four separate occasions during his two month stay in the OCDC and either saw him or were informed of his medical requests. ECF No. 16, p.3. On September 20, 2016, Plaintiff complained about having a rash and was prescribed medication. On October 11, 2016, plaintiff was having pain in the genital area and when he tried to have a bowel movement and he was prescribed medication. On October 31, 2016, Plaintiff again complained of pain in his groin and anal area. According to the Jail Notes Plaintiff refused to take the medications he was prescribed because he claimed it gave him a headache. Because of his refusal to take the prescribed medication, the medication was discontinued. On November 17, 2016, the corresponding Jail Clinic note states Plaintiff "…will not give symptoms just says he is hurting" and the physician's findings stated "patient continues to refuse to give detailed symptoms and complaints. Patient refused prior medications. No treatment or new medications provided for today's encounter." ECF Nos. 14-1, 14-4, and 14-7.

Based on the record, I am convinced Defendant Deluca and Defendant Mendenhall did not ignore or refuse to treat a serious medical condition.[1] Plaintiff was prescribed medication for his rash two days after he reported his condition to Defendant Mendenhall. ECF No. 14-3, 14-4. He was given Tylenol for pain and a stool softener to help with the pain in his groin and his difficulty with bowel movements. ECF Nos. 14-3, 14-4. Plaintiff then began refusing to take his medications. ECF No. 14-4. In light of his refusal, the medications were discontinued. As previously stated, mere disagreement with treatment does not rise to the level of a constitutional violation. *Id.* at 499.

In his Response to the Motion for Summary Judgment Plaintiff claims his "groin area complications became worse. I've had to go through ADC prison medical authorities about his

---

[1] The Court will assume for purposes of ruling on the summary judgment motion that Plaintiff's rash, pain in the groin and anal area, and difficulty having a bowel movement are serious medical conditions.

physical harm and the actions of these defendants have had plaintiff receive restrictions as to what he's able to lift, work at, work on. The delays and deprivations have literally destroyed Plaintiff's life, including the possible ability to help reproduce children." ECF No. 16, p. 13. When a claim relates to a delay in treatment, Plaintiff must place verified medical evidence into the record to demonstrate the alleged delay in treatment caused harm and had some detrimental effect. *Beyerbach v. Sears,* 49 F.3d 1324, 1326 (8th Cir. 1995); *Laughlin v. Schriro,* 430 F.3d 927, 929 (8th Cir. 2005) (quoting *Crowley v. Hedgepeth,* 109 F.3d 500, 502 (8th Cir. 1997)). Plaintiff has not submitted to the Court any verified proof any alleged delay in receiving medical care or medication caused a detrimental effect to his overall prognosis. Consequently, Plaintiff's claims against Defendants for denial of medical care fail as a matter of law.

    3. <u>Failure to Exhaust Administrative Remedies</u>

The PLRA in 42 U.S.C. § 1997e(a) provides: "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Exhaustion is mandatory. *Porter v. Nussle*, 534 U.S. 516, 524-25 (2002). In *Jones v. Bock*, 549 U.S. 199 (2007), the Supreme Court concluded "to properly exhaust administrative remedies prisoners must complete the administrative review process in accordance with the applicable procedural rules." *Id.* at 218 (internal quotation marks and citation omitted). The Court stated the "level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to clam, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Id*.

The Eighth Circuit Court of Appeals has recognized two exceptions to the PLRA exhaustion requirement: (1) when officials have prevented prisoners from utilizing the grievance

9

procedures; or (2) when the officials themselves fail to comply with the grievance procedures. *See Gibson v. Weber,* 431 F.3d 339, 341 (8th Cir. 2005) (citing *Miller v. Norris*, 347 F.3d 736 (8th Cir. 2001) (explaining a prisoner is only required to exhaust those administrative remedies that are available and any remedies that prison officials prevent a prisoner from utilizing are not considered available)).

Plaintiff admits the OCDC had a grievance process for detainees to use when they believed they had been subjected to a violation of their civil rights. ECF No. 16. He also admits he did not submit grievances relating to mold or inadequate drinking water. ECF No. 16. Instead, Plaintiff claims in his Response his "attempts to submit grievances about this issue was hindered due to various verbal threats of harm towards the Plaintiff. Even threatening to have plaintiff placed in very dangerous situations with jail deputy detention authorities lying to other detainees to get plaintiff hurt if plaintiff grieved such." ECF No. 16.

The Court is not persuaded by Plaintiff's bare allegations of threats to prevent his filing certain grievances. The summary judgment record reflects Plaintiff utilized the grievance process at the OCDC sixty-eight (68) times between September 18, 2016, and November 29, 2016. ECF No. 14-6. Never once did Plaintiff mention mold, inadequate drinking water, or unsanitary cleaning supplies. Because Plaintiff failed to exhaust his administrative remedies with respect to these alleged conditions of confinement I recommend these claims be dismissed.

4. <u>Conditions of Confinement</u>

Plaintiff's only remaining condition of confinement claim relates to his allegation regarding the heat in his pod at the OCDC. "[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." *County of Sacramento v. Lewis*, 523

10

U.S. 833, 851 (1998)(citation omitted). The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones. *See Farmer v. Brennan*, 511 U.S. 825, 832 (1994). The Cruel and Unusual Punishment Clause of the Eighth Amendment forbids conditions that involve the "wanton and unnecessary infliction of pain," or are "grossly disproportionate to the severity of the crime." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).

As a pretrial detainee, Plaintiff is entitled to "'at least as great' protection as that afforded to convicted prisoners under the Eighth Amendment." *Owens v. Scott Cnty. Jail,* 328 F.3d 1026, 1027 (8th Cir. 2003) (quoting *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244, 103 S. Ct. 2979, 77 L.ED.2d 605 (1983). "Under the Fourteenth Amendment, a pretrial detainee's constitutional rights are violated if the detainee's conditions of confinement amount to punishment." *Morris,* 601 F.3d at 809. However, the identical deliberate-indifference standard as that applied to conditions of confinement claims made by convicted inmates is applied in determining whether a pretrial detainee's constitutional rights have been violated. *Butler v. Fletcher,* 465 F.3d 340, 344 (8th Cir. 2006); *Crow v. Montgomery*, 403 F.3d 598 (8th Cir. 2005).

A prisoner alleging an Eighth Amendment violation must prove both an objective and subjective element. *See Revels v. Vincenz*, 382 F.3d 870, 875 (8th Cir. 2004) (*citing Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). "The defendant's conduct must objectively rise to the level of a constitutional violation by depriving the plaintiff of the minimal civilized measure of life's necessities. The defendant's conduct must also reflect a subjective state of mind evincing deliberate indifference to the health or safety of the prisoner." *Revels*, 382 F.3d at 875 (citations and internal quotation marks omitted). Deliberate indifference is established when the plaintiff shows "the defendant was substantially aware of but disregarded an excessive risk to inmate health or safety." *Revels,* 382 F.3d at 875.

The law clearly indicates a pretrial detainee cannot be punished. *See Bell v. Wolfish,* 441 U.S. 520, 535 (1979). "However, not every disability imposed during pretrial detention amounts to punishment in the constitutional sense." *Smith v. Copeland,* 87 F.3d 265, 268 (8th Cir. 1996) (internal quotations omitted). *See also Bell,* 441 U.S. at 539. Furthermore, courts are not concerned with *de minimis* levels of imposition on inmates. *Id.*

Plaintiff submitted two separate grievances relating to the heat in his pod. On September 26, 2016, Plaintiff stated "Request turn the air on its hot as all get out with the showers going…" Defendant Bolton responded two days later indicating the "A/c is working fine.". ECF No. 14-6, p. 28. On October 15, 2016, Plaintiff submitted another grievance "Problem A/C not working Request I'm writing about the A/C in h-pod it hasen't worked since I've been in here. People are nasty in and thats how germs srped. I rather it be ice cold then hot." Defendant Bolton responded three days later letting Plaintiff know that a repair service had been called. ECF No. 14-6, p. 17. In his Complaint Plaintiff alleges there was an "outbreak in boils from the heat in pod". ECF No. 1. Then, in his Response to the summary judgment motion he claims he developed "boil-like symptoms on his body" as a result of the heat. ECF No. 16.

In this case Plaintiff has not shown his living conditions denied him of the minimal measure of life's necessities nor has he demonstrated the heat he complains of posed a substantial risk of serious harm to his health. *See Farmer v. Brennan,* 511 U.S. 825, 834 (1994). Defendant Bolton responded to Plaintiff's grievances and when the air conditioner was not working properly he called a repair service. Although Plaintiff has alleged he developed boil like symptoms from the heat, there is no evidence in the record to support such a claim. I find the discomfort Plaintiff suffered from a faulty air conditioner to be *de minimis,* and as a result does not implicate the

12

Constitution. *See Smith,* 87 F.3d at 268. Accordingly, Plaintiff's condition of confinement claim relating to heat fails as a matter of law.

5. <u>Access to Law Library</u>[2]

On October 10, 2016, Plaintiff submitted a request through the OCDC kiosk system stating "i have a court date coming up on the 20th of this month and dont think i will have a lawyer, i need access to a law librey so I can study to defend myself with my case pending…" ECF No. 14-6, p. 19. At the time Plaintiff submitted this request he was represented by counsel. This is confirmed by Plaintiff's own statement in his Response to the summary judgment motion. Plaintiff asserts he was denied access to a law library and "this deprived me of the right to present a proper defense, thereby forcing me to be mislead by the appointed, public defender, who only mislead and misguided plaintiff into an induced plea of guilty. This was due to plaintiffs' inability to do his own legal research and see if the appointed attorney was being truthful as an advocate." ECF No. 16, p. 3.

The Supreme Court has held "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Bounds v. Smith,* 430 U.S. 817, 828 (1977). Nevertheless, *Bounds* "did not create an abstract, freestanding right to a law library or legal assistance." *Lewis v. Casey,* 518 U.S. 343, 351 (1996). Instead, prison officials must provide inmates with "meaningful access to the courts," *Bounds,* 430 U.S. at 824, and providing a law library is merely one way to comply with this obligation. *See Bear v. Fayram,* 650 F.3d 1120, 1123 (8th Cir. 2011) (the constitutional

---

[2] The Court is not convinced Plaintiff fully exhausted his administrative remedies concerning the alleged denial of access to a law library. However, giving the benefit of all reasonable inferences, Plaintiff's claim will be addressed on the merits.

requirement of access to the courts may be satisfied in a number of ways including, prison libraries, jailhouse lawyers, private lawyers on contract with the prison, or some combination of these and other methods).

However, an inmate has no standing to pursue an access claim unless he can demonstrate he suffered prejudice or actual injury as a result of the prison officials' conduct. *See Lewis,* 518 U.S. at 351-2; *see also Farver v. Vilches,* 155 F.3d 978, 979-980 (8th Cir.1998) (per curiam); *Klinger v. Dep't of Corr.,* 107 F.3d 609, 617 (8th Cir.1997) (to prevail on access-to-courts claim, inmate must show actual injury or prejudice even if denial of access to library is complete and systematic); *McMaster v. Pung,* 984 F.2d 948, 953 (8th Cir. 1993). "To prove a violation of the right of meaningful access to the courts, a prisoner must establish the state has not provided an opportunity to litigate a claim challenging the prisoner's sentence or conditions of confinement in a court of law, which resulted in actual injury, that is, the hindrance of a nonfrivolous and arguably meritorious underlying legal claim.'" *Hartsfield v. Nichols,* 511 F.3d 826, 831 (8th Cir. 2008) (citations omitted).

According to Defendant Bolton, during Plaintiff's incarceration at the OCDC "detainees were allowed access to their attorneys through the use of an attorney request form that the detainee filled out and the detention center staff would fax to the attorney. Detainees are given access to their attorneys, with reasonable notice." ECF No. 14-1. After the October 10, 2016 request, Plaintiff did not notify any defendant or file any grievances concerning being denied access to a law library prior to filing this lawsuit on October 21, 2016. Plaintiff was represented by an attorney in his criminal matters during his incarceration in the OCDC and had access to the attorney if he simply requested it. This alone satisfies the constitutional requirement of providing inmates meaningful access to the courts. *See Bear,* at 1123. Defendants did not prevent Plaintiff from

seeing his attorney and there is no evidence Plaintiff ever informed Defendants he had fired his attorney, as he alleges in the Complaint, prior to filing this lawsuit on October 21, 2016. ECF No. 1. Plaintiff may be disappointed with his attorney but this does not create a claim against Defendant Bolton or any other officer at the OCDC for denial of access to a law library.

Plaintiff has not demonstrate he was denied meaningful access to the courts nor has he shown he suffered prejudice or actual injury as a result of the conduct of Defendant Bolton. Accordingly, Plaintiff's claim he was denied access to a law library fails as a matter of law.

## CONCLUSION

For the reasons stated, I recommend Defendants Deluca, Mendenhall, Bolton and Norwood's Motion for Summary Judgment (ECF No. 12) be **GRANTED** and all claims against them be dismissed with prejudice.

**The parties have fourteen (14) days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

**DATED this 23rd day of June 2017.**

/s/ Barry A. Bryant
HON. BARRY A. BRYANT
UNITED STATES MAGISTRATE JUDGE